IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                 No. CR 24-1719 JB

JOSIAH BODIE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Investigation Report, filed August 11, 2025 (Doc. 51)("Objections"). Sentencing in this matter will take place on August 25, 2025. Notice of Sentencing, filed June 18, 2025 (Doc. 46). The primary issue is whether the United States Probation Office's Presentence Investigation Report, filed July 21, 2025 (Doc. 47)("PSR"), incorrectly applies a 7-level enhancement under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2A2.2(b)(3)(C) for Defendant Josiah Bodie causing "permanent or life-threatening bodily injury." Having reviewed carefully the parties' arguments, relevant law, and applicable facts, the Court: (i) concludes that the PSR correctly applies a 7-level enhancement under U.S.S.G. § 2A2.2(b)(3)(C); and (ii) the PSR's facts support that the victim sustains life-threatening bodily injury when he first receives medical care. The Court thus overrules Bodie's Objections.

## FACTUAL BACKGROUND

    Bodie objects to two facts that the PSR asserts multiple times: that the victim, John Doe, sustains a "life-threatening bodily injury" and that such injury "involved a substantial risk of death." PSR ¶ 26, at 7-8; id. ¶ 99, at 18. See also PSR ¶ 35, at 9 (explaining that the victim sustains a "life-threatening bodily injury, warranting a 7-level increase under § 2A2.2(b)(3)(C)"). The

Court does not adopt, however, those conclusions in the PSR as facts. Bodie, however, does not object to the remaining PSR's facts, and the Court thus concludes that they are findings of fact. See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact"). The Court also incorporates facts from John Doe's seven medical records that detail his treatment from initial emergency response to hospital discharge. See EMS Incident Report (dated November 12, 2024), filed August 11, 2025 (Doc. 51-1); Emergency Documentation (dated November 12, 2024 (Doc. 51-2)("Emergency Report"); Northern Navajo Medical Center Report (dated November 12, 2024), filed August 11, 2025 (Doc. 51-4)(" November 12 Navajo Report"); Progress Notes (dated November 17, 2025), filed August 11, 2025 (Doc. 51-6); Surgery Progress Notes (dated November 18, 2025), filed August 11, 2025 (Doc. 51-7); Discharge Summary (dated November 18, 2025), filed August 11, 2025 (Doc. 51-5); Northern Navajo Medical Center Report (dated November 19, 2024), filed August 11, 2025 (Doc. 51-3)("November 19 Navajo Report").

   **1.**  **The Incident.**

   1.  Bodie, a Navajo Nation member, assaults John Doe outside a grocery store with a knife within the exterior boundaries of the Navajo Nation. See PSR ¶ 26, at 7.

   2.  Bodie swings a knife at the victim, John Doe, and stabs him in the upper back shoulder blade as well as the right side of his face. See PSR ¶¶ 24, 26, at 7.

   3.  Doe also has lacerations above his left eyebrow and left cheek. See EMS Incident Report at 1.

   4.  Doe has a puncture wound one to four inches below the left shoulder blade. See EMS Incident Report at 2.

   5.  When the EMS unit first intercepts Doe, he is conscious and breathing. See EMS Incident Report at 1.

6. En route to treatment, Doe goes in and out of consciousness. See EMS Incident Report at 1-2.

7. The EMS unit controls Doe's bleeding. See EMS Incident Report at 2.

**2.   The Injuries and Diagnosis.**

8. Doe sustains hemopneumothorax pulmonary contusions, a large hematoma on his neck, and a laceration to his right cheek. See PSR ¶ 26, at 7.

9. Hemopneumothorax is a form of chest trauma in which blood (hemothorax) and air (pneumothorax, or collapsed lung) are in the hollow area (cavity) between the lungs and the chest wall at the same time, making it difficult or impossible for the lung to fully inflate. See Hemopneumothorax: Causes, Symptoms & Treatment, Cleveland Clinic (August 13, 2023), https://my.clevelandclinic.org/health/diseases/25199-hemopneumothorax.

10. Pulmonary contusions are bruises of the lung caused by blunt force trauma, leading to bleeding and fluid accumulation in the lung tissue, which can impair breathing and oxygen exchange. See Pulmonary Contusion: Causes, Symptoms & Treatment, Cleveland Clinic (September 29, 2023), https://my.clevelandclinic.org/health/diseases/pulmonary-contusion.

11. A hematoma is a collection of blood that pools outside of blood vessels, typically due to injury or trauma. See Hematoma Definition, Types & Treatment, Cleveland Clinic (November 14, 2024), https://my.clevelandclinic.org/health/diseases/hematoma.

12. Doe is "presented as a level I trauma for stabbing to the left upper back and right face," "mildly hypoxic into the 80s with borderline low blood pressure," with "absence of lung sliding into the left lung fields." November 12 Navajo Report at 1.

13. A Level I trauma evaluation means that a patient has life-threatening injuries; in comparison, Level II is for a patient with potentially life-threatening injuries. See UAMS Medical

Center Trauma Services Manual: Trauma Team Activation and Evaluation Criteria at 1, University of Arkansas for Medical Sciences (December 2018).

14.     Hypoxia is low levels of oxygen in the body tissue.  A person who experiences hypoxia is called a hypoxic.  See Hypoxia, Cleveland Clinic (May 12, 2022), https://my.clevelandclinic.org/health/diseases/23063-hypoxia.

15.     Hillary Baker, DO states that Doe "was recognized as having a high probability of imminent or life-threatening deterioration."  November 12 Navajo Report at 1.

16.     Specifically, Doe "required [] direct attention, intervention, and personal management due to: Traumatic tension pneumothorax, stabbing to the left upper back, right face." November 12 Navajo Report at 1 (Court adds brackets).

17.     Dr. James Boyd, MD conducts an assessment, and indicates that Doe has "trauma." Emergency Documentation at 1.

18.     Dr. Boyd notes that Doe has "[h]emothorax," i.e., blood build-up between the lungs and rib cage.  Emergency Documentation at 1 (Court adds brackets).

19.     Hemothorax is a serious condition in which blood collects in the cavity between the lungs and the rib cage.  See Hemothorax: Causes, Symptoms, Diagnosis & Treatment, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/25239-hemothorax (last accessed August 14, 2025)("Hemothorax Definition").  Without treatment, blood can continue to accumulate and put so much pressure on the outside of the lung that it cannot fully inflate.  See Hemothorax Definition.

20.     Severe hemothorax can be fatal without prompt treatment.  See Hemothorax definition.

21. Doe also has a "pneumothorax," i.e., air build-up between the longs and rib cage that prevents the lungs from properly filling with air when breathing. Emergency Documentation at 1.

22. Pneumothorax is also known as "collapsed lung." Pneumothorax -- Symptoms and causes, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/pneumothorax/symptoms-causes/syc-20350367 (August 8, 2024).

23. There are penetrating wounds to the left of the hemothorax with "intramuscular contusions," i.e., internal muscle bruising, and "extensive subcutaneous gas" of the inferior lateral left neck, posterior and lateral left chest wall, and left axilla, i.e., escaped air from the lungs into body tissue. Emergency Documentation at 1. See also Subcutaneous Emphysema: What It Is, Causes & Treatment, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/subcutaneous-emphysema (last accessed August 14, 2025)

24. "Subcutaneous" refers to the layer of tissue located under the skin. See Subcutaneous, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/subcutaneous (last accessed August 22, 2025).

   **3.   The Hospitalization and Treatment.**

25. Dr. Boyd inserts a chest tube to suction out the blood from the cavity between Doe's lungs and rib cage. See Emergency Documentation at 1.

26. The emergency department physician "upsize[s]" the chest tube to a larger size. November 19 Navajo Report at 1 (Court adds brackets).

27. Doe experiences pain at the site of his stab wound and of his chest tube, and shortness of breath from the pain of inhaling. See November 19 Navajo Report at 1.

28. Doe also coughs up blood-tinged mucus. See November 19 Navajo Report at 1.

29. On November 17, 2024, medical staff remove the chest tube. See Discharge Summary at 1.

30. At this point, Doe experiences pain, but no worsening conditions such as increased shortness of breath. See Discharge Summary at 1.

31. On November 18, Doe describes the post-chest-tube-removal pain as a "10 out of 10," and notes a cough, a small amount of bloody mucus, increased burping causing pain, and feeling weak. Surgery Progress Note at 1.

32. On November 18, the San Juan Regional Medical Center discharges Doe. See Surgery Progress Note at 1.

33. As of November 19, after a complete blood count or "CBC" that morning, Doe's bleeding is mostly resolved "given the stable nature of his hemoglobin." November 19 Navajo Report at 2.

## PROCEDURAL BACKGROUND

Bodie pleads guilty to one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). See Plea Agreement at 1, filed May 28, 2025 (Doc. 44). The United States Probation Office ("USPO") files the PSR. The PSR applies a 7-level enhancement under U.S.S.G. § 2A2.2(b)(3)(C) for causing "permanent or life-threatening bodily injury." PSR ¶ 35, at 9. The PSR calculates a Guidelines imprisonment range of 37 to 46 months based on a total offense level of 21 and a criminal history category of I. See PSR ¶ 83, at 16.

Bodie now objects to the application of a 7-level bodily injury enhancement under U.S.S.G. § 2A2.2(b)(3)(C) for causing "permanent or life-threatening bodily injury." Objections at 1. First, Bodie argues that there is insufficient evidence to find that John Doe's injuries are life-threatening. See Objections at 7. Bodie asserts that there is no substantial risk of death given that Doe is breathing in the ambulance and not bleeding excessively. See Objections at 8. Bodie also argues

that there is no permanent or likely permanent impairment to any body part or mental faculty. See Objections at 8. Second, Bodie argues that the lower 6-level bodily injury enhancement under U.S.S.G. § 2A2.2(b)(3)(E) for injuries between "permanent or life-threatening injuries," and "serious bodily injuries," also does not apply. Objections at 9. Bodie contends that there are not numerous puncture wounds, permanent facial scarring, or ongoing infections, and that there is no evidence that Doe's pneumothorax could lead to permanent lung damage. See Objections at 10-11. Third, Bodie argues that the lowest 5-level bodily injury enhancement under U.S.S.G. § 2A2.2(b)(3)(B) for "serious bodily injuries" applies. Objections at 11. Bodie explains that Doe's injuries are not life-threatening, but cause extreme pain; additionally, according to Bodie, the injuries are not permanent, but are prolonged. See Objections at 13. As of this Memorandum Opinion and Order's filing, the United States has not filed a response.

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ." Fed. R. Crim. P. 32(c)(1). A presentence report must apply the advisory sentencing Guideline, meaning that it must:

(A)  identify all applicable guidelines and policy statements of the Sentencing Commission;

(B)  calculate the defendant's offense level and criminal history category;

(C)  state the resulting sentencing range and kinds of sentences available;

(D)  identify any factor relevant to:

  (i)  the appropriate kind of sentence, or

  (ii)  the appropriate sentence within the applicable sentencing range; and

(E)  identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1). A PSR also must provide additional information, including:

- (A) the defendant's history and characteristics, including:

    - (i) any prior criminal record;

    - (ii) the defendant's financial condition; and

    - (iii) any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

- (B) information that assesses any financial, social, psychological, and medical impact on any victim;

- (C) when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

- (D) when the law provides for restitution, information sufficient for a restitution order;

- (E) if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

- (F) a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

- (G) any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report. See Fed. R. Crim. P. 32(f). Parties must make their objections in writing within fourteen days of receiving the PSR. See Fed. R. Crim. P. 32(f)(1). Parties may object to many aspects of the PSR, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). For example, a party can object to a PSR's statement of facts. See, e.g., United States v. Garcia, No. CR 20-1370 KWR, 2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a PSR misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries). If a party raises a factual objection, it must

present "information to cast doubt on" the PSR's recitation of the facts. See United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994). A party also can object that the USPO miscalculated a defendant's criminal history category. See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history category by several points). Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13, 2022)(Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

      Ideally, the parties and the USPO can work through objections without the Court's assistance. Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Fed. R. Civ. P. 32(f)(3). In keeping with rule 32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently. If the parties and

the USPO cannot work out an objection, then the parties may file an objection with the Court. If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). When resolving factual objections, the Court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008). Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the Court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.[1] See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.). The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing." United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

**LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES**

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into

---

[1]There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

consideration various factors relating both to offense and offender -- in imposing judgment <u>within the range</u> prescribed by statute." 530 U.S. at 481 (emphasis in original).  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi v. New Jersey</u>, 530 U.S. at 490.  In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in <u>Apprendi v. New Jersey</u>, stating that the "'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>." <u>Blakely v. Washington</u>, 542 U.S. at 303 (emphasis in original)(citing <u>Ring v. Arizona</u>, 536 U.S. 584, 602 (2002); <u>Harris v. United States</u>, 536 U.S. 545, 563 (2002)(plurality opinion), <u>overruled by</u> <u>Alleyne v. United States</u>, 570 U.S. 99 (2012)).  In <u>United States v. Booker</u>, however, the Supreme Court held that, because the sentencing guideline ranges are no longer mandatory, "<u>Apprendi</u> does not apply to the present advisory-Guidelines regime." <u>United States v. Ray</u>, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing <u>United States v. Booker</u>, 543 U.S. at 259).  See <u>United States v. Booker</u>, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of <u>Apprendi</u>'s requirement." (quoting <u>United States v. Booker</u>, 543 U.S. at 221)(second alteration added by <u>United States v. Booker</u>)).  More recently, the Supreme Court held that the requirements in <u>Apprendi v. New Jersey</u> apply to facts that increase a defendant's mandatory minimum sentence.  See <u>Alleyne v. United States</u>, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker did not change the district court's enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine. See United States v. Magallanez, 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on government witnesses' testimony of the various amounts that they had sold to the defendant -- attributed 1,200 grams of methamphetamine to the defendant and used that amount to calculate his sentence under the Guidelines. See United States v. Magallanez, 408 F.3d at 682. The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount. See United States v. Magallanez, 408 F.3d at 682-83. On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684. Although United States v. Booker made the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held

that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105(10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2] "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United

---

[2]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms). Subsequent to United States v. Washington, the Tenth Circuit reiterated the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit." United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increases his or her sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[3] The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States . . . expands the rule from Apprendi v. New Jersey, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315. The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed

---

[3]United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(unpublished). The Court concludes that United States v. Hendrickson has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt." United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting Alleyne v. United States, 570 U.S. at 112-14). Further, the Tenth Circuit has determined that a district court could use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with Alleyne v. United States, "so long as the court does not use its own drug quantity finding to alter the defendant's statutory sentencing range." United States v. Cassius, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

## ANALYSIS

First, the Court denies Bodie's objection to applying the 7-level sentencing enhancement for "permanent or life-threatening bodily injury" under U.S.S.G. § 2A2.2(b)(3)(C), because the medical report evidence shows that John Doe's injuries involve a substantial risk of death. Second, because the Court applies the 7-level sentencing enhancement, the Court does not apply the lower 6-level sentencing enhancement for injuries between "permanent or life-threatening" and "serious" bodily injury under U.S.S.G. § 2A2.2(b)(3)(E). Third, for the same reason, the Court denies Bodie's request to apply the lowest 5-level sentencing enhancement for "serious bodily injury" in § 2A2.2(b)(3)(B).

**I.     THE 7-LEVEL SENTENCING ENHANCEMENT FOR "PERMANENT OR LIFE-THREATENING BODILY INJURY" UNDER U.S.S.G. § 2A2.2(B)(3)(C) APPLIES.**

Bodie argues that the 7-level sentencing enhancement for "permanent or life-threatening bodily injury," U.S.S.G. § 2A2.2(b)(3)(C), does not apply, because John Doe's injuries are not life-threatening, see Objections at 6-7. The commentary on the sentencing Application Instructions, § 1B1.1, defines "permanent or life-threatening bodily injury":

> (K) "Permanent or life-threatening bodily injury" means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily

- 15 -

> member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent. In the case of a kidnapping, for example, maltreatment to a life-threatening degree (e.g., by denial of food or medical care) would constitute life-threatening bodily injury.

U.S.S.G. § 1B1.1 Commentary 1(K). The Tenth Circuit sustains the "permanent or life-threatening bodily injury" enhancement when there is permanent bodily damage. See United States v. Talamante, 981 F.2d 1153, 1158 (10th Cir. 1993). For example, in United States v. Talamante, the defendant assaults the victim, which ruptures the victim's right eye and requires surgery to remove the eye. See 981 F.2d at 1155. This "obvious disfigurement" constitutes permanent bodily injury. United States v. Talamante, 981 F.2d at 1158. Other United States Courts of Appeals hold similarly. See, e.g., United States v. Price, 149 F.3d 352, 354 (5th Cir. 1998)(finding permanent bodily injury when the victim's damage to his hand is permanent and results in fifteen to twenty-five percent loss of hand function); United States v. James, 957 F.2d 679, 681 (9th Cir. 1992)(finding permanent bodily injury when a child sexual assault victim contracts genital herpes).

The Tenth Circuit also sustains the "permanent or life-threatening bodily injury" enhancement when the victim has a substantial risk of death. United States v. Tindall, 519 F.3d 1057, 1064 (10th Cir. 2008). In United States v. Tindall, the defendant hits the victim in the back of the head, jumps on top of the victim and hits him at least three more times. 519 F.3d at 1059. The victim bleeds heavily, and the treating doctor reports that "the arterial laceration to the back of Mr. WhiteAntelope's head posed a substantial risk of death at the time of the injury because [of] the amount of blood loss," which is "half his blood." 519 F.3d at 1059-60. The treating doctor further notes that Mr. WhiteAntelope would have bled to death without treatment. See United States v. Tindall, 519 F.3d at 1060.

Here, while Doe's injuries are not permanent, they do cause a substantial risk of death. The treating physician, Dr. Baker, states that Doe "was recognized as having a high probability of

imminent or life-threatening deterioration." November 12 Navajo Report at 1. Specifically, Doe "required my direct attention, intervention, and personal management due to: Traumatic tension pneumothorax, stabbing to the left upper back, right face." November 12 Navajo Report at 1. Dr. Baker provides ninety-minutes of "critical care." November 12 Navajo Report at 1. Dr. Baker also notes that Doe has "level I trauma" from stabbing injuries to the back and face. November 12 Navajo Report at 1. A Level I trauma evaluation means that a patient has life-threatening injuries; in comparison, Level II is for a patient with potentially life-threatening injuries, while Level II is for a patient with no obvious life-threatening injuries. See UAMS Medical Center Trauma Services Manual: Trauma Team Activation and Evaluation Criteria at 1, University of Arkansas for Medical Sciences (December 2018). Dr. Boyd's assessment of Doe also indicates that Doe has "trauma." Emergency Documentation at 1. Dr. Boyd identifies that Doe has both "Hemothorax" and "pneumothorax," or collapsed lung, indicating potentially severe lung damage. Emergency Documentation at 1. Dr. Boyd inserts a chest tube into Doe to suction out and drain blood in the lungs that prevents the lung from fully expanding. See November 19 Navajo Medical Center Report at 2.

Doe's lung damage is not permanent like the surgically removed eye in United States v. Talamante, but as the Court notes above, the Tenth Circuit also considers whether the injuries pose a substantial risk of death, under U.S.S.G. § 1B1.1 Commentary 1(K). See United States v. Tindall, 519 F.3d at 1064. Here, two different treating doctors -- Dr. Baker and Dr. Boyd -- deem Doe's injuries life-threatening at the time of injury, just like the treating doctor in United States v. Tindall deems his patient's injuries to be life-threatening. Emergency Documentation at 1; November 19 Navajo Medical Center Report at 1.

Bodie agrees that the medical reports claim that Doe "was recognized as having a high probability of imminent or life-threatening deterioration," November 12 Navajo Report at 1, but contend that it cannot be true that Doe's injuries were "life-threatening," because the reports do not show evidence of blood loss, Objections at 9. Bodie argues, therefore, that United States v. Tindall is distinguishable, because here, Doe has minimal blood loss. See Objections at 6-7. Bodie also points to other Tenth Circuit cases in which a victim's severe loss of blood is the marker for sustaining the "permanent or life-threatening bodily injury" enhancement. Objections at 6-7. The Guidelines Commentary does not require, however, that blood loss is the sole basis for a "life-threatening bodily injury." Rather, the Guidelines Commentary requires only that a "life-threatening bodily injury" is an "injury involving a substantial risk of death." U.S.S.G. § 1B1.1 Commentary 1(K). Given the multiple reports that Doe's stabbing wounds, hemothorax, and pneumothorax i.e., collapsed lung, results in life-threatening, Level I trauma injury, the Court concludes that the 7-level sentencing enhancement for "permanent or life-threatening bodily injury" applies.

## II.   THE LOWER 6-LEVEL ENHANCEMENT DOES NOT APPLY.

Bodie argues that the 6-level enhancement for injuries that fall between "permanent or life-threatening injuries," and "serious bodily injury," also does not apply. Objections at 9; U.S.S.G. § 2A2.2(b)(3)(E). "Serious bodily injury" is "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 Commentary 1(M). There are only a few United States Courts of Appeals cases that apply this intermediate enhancement. The Seventh Circuit upholds the district court's determination of an injury between "serious" and "permanent" bodily injury when a victim experiences substantial blood loss, loss of consciousness on the date of the beatings, a one-week hospital stay, renal

problems, recurring blurred vision, headaches, and a continued need for counseling. United States v. Samuels, 521 F.3d 804, 816 (7th Cir. 2008). The victim also testifies at the sentencing hearing that he has pain from a bite mark sustained during the fight and occasional blurred vision in his left eye. See 521 F.3d at 816. There, however, the Seventh Circuit does not describe any evidence that the victim experiences permanent or life-threatening injury, making the lower 6-level enhancement appropriate. Here, in contrast to United States v. Samuels, Doe's stabbing wounds that lead to Level I Trauma lung damage and critical care are more severe than the "extreme physical pain" or "protracted impairment" of a body part that "serious bodily injury" requires. U.S.S.G. § 2A2.2(b)(3)(E); U.S.S.G. § 1B1.1 Commentary 1(M). Doe is hospitalized, but, nevertheless, his injuries are still life-threatening, and fall under the highest 7-level enhancement rather than under the lower 6-level enhancement.

### III.     THE LOWER 5-LEVEL ENHANCEMENT DOES NOT APPLY.

Finally, Bodie argues that at most, the 5-level enhancement for "serious bodily injury" applies. Objections at 11; § 2A2.2(b)(3)(B). For the same reason the Court notes above that Doe's injuries are life-threatening, the Court disagrees with Bodie's argument and concludes that the 7-level enhancement is appropriate. Additionally, circumstances where Courts of Appeals apply the "serious bodily injury" enhancement involve less severe injuries than Doe's, such as where no hospitalization is required. E.g., United States v. Moore, 997 F.2d 30, 37 (5th Cir. 1993); United States v. Newman, 982 F.2d 665 (1st Cir. 1992)(holding that serious bodily injury occurs when the victim receives a gunshot wound on his leg and undergoes a two-hour emergency room visit, but required no hospitalization or surgery). In another example, the victim of the defendant's beating experiences severe headaches, facial bruising and hemorrhaging around the eyes and under the scalp, and inner ear injury resulting in dizziness and tinnitus. See United States v. Newman, 982 F.2d 665, 672 (1st Cir. 1992). The victim is hospitalized, but the evidence does not point to

any permanent or life-threatening injuries.  See 982 F.2d at 672.  Given Doe's stabbing wounds and resulting life-threatening lung damage that requires emergency care and several days of hospitalization, a 5-level enhancement for "serious bodily injury" is not appropriate.

**IT IS ORDERED** that: (i) the Defendant's Objections to the Presentence Investigation Report, filed August 11, 2025 (Doc. 51), are overruled; (ii) the applicable offense level is 21; (iii) the applicable criminal history category is I; and (iv) the United States Sentencing Guidelines establish an imprisonment range of 37 to 46 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
  United States Attorney
Paul J. Mysliwiec
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Richelle Anderson
The Law Office of Ryan J. Villa
Albuquerque, New Mexico

*Attorneys for the Defendant*